**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**ARTHUR LEE PIPES, SR.**

      **Plaintiff,**

**vs.**                                    **CASE NO. 1:08CV182-MP/AK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II and for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## A.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB and SSI on October 19, 2004, alleging a disability onset date of March 31, 2004, because of chest, back, and arm pain in addition to bipolar disorder and social anxiety. Plaintiff petitioned for a hearing before

an administrative law judge (ALJ), who conducted a hearing on March 26, 2008, and entered an unfavorable decision on April 11, 2008. The Appeals Council denied Plaintiff's request for review on July 8, 2008, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

B.    **FINDINGS OF THE ALJ**

The ALJ found that the Plaintiff had a severe combination of impairments: sympathetic dystrophy, an affective disorder, an anxiety disorder, but that this did not meet the listings. (R. 15). Further, despite his combination of impairments, Plaintiff has the residual functional capacity to perform sedentary work, perform simple routine tasks, and occasionally interact with others. (R. 17). In making this finding, the ALJ considered the nature and extent of Plaintiff's symptoms that were reasonably consistent with objective medical evidence and opinion evidence. (R. 17).

While Plaintiff testified to mental limitations that prevented him from working, the ALJ found that there was no medical evidence in the record that demonstrates more than mild to moderate limitations. (R. 19). Moreover, despite Plaintiff's complaints of severe and total disability, no treating source has ever placed restrictions or limitations of any kind on Plaintiff's functional abilities. (R. 20). One treating source suggested that Plaintiff may be exaggerating his claims of dysfunction with regard to his left upper extremity, and his primary treating source for his mental conditions discontinued treatment because Plaintiff did not comply with the narcotics agreement. (R. 20). Other treatment notes reflect that Plaintiff's symptoms were significantly improved by his medication regimen. (R. 19-21). Finally, Plaintiff's subjective complaints of pain and limitation are not fully credible because they conflict with his own description of his daily

**No. 1:08CV182-MP/AK**

activities. (R. 20). The ALJ found that while the Plaintiff has poor motivation and deficits due to anxiety attacks, social issues and depression, "he retains adequate capacity for simple and well structured tasks in which he need not greet the general public" and is also able to "work with limited interaction with others" and "get along with others." (R. 21).

In addition, the ALJ found that, based upon the testimony of a vocational expert, there are significant numbers of jobs available regionally and nationwide that only require Plaintiff to perform light work. (R. 22-23). Therefore, Plaintiff is not disabled and can find work performing one of these jobs.

## C.  <u>ISSUE PRESENTED</u>

Plaintiff argues that the ALJ erred by failing to include all of Plaintiff's mental limitations in the ALJ's hypothetical posed to the vocational expert.

The government responds by arguing that the ALJ's hypothetical questioning properly included all of Plaintiff's mental limitations as the ALJ found them to be based upon the record. The ALJ found that Plaintiff was limited to simple, routine tasks and occasional interaction with others. (R. 17). These are the same limitations posed by the ALJ to the vocational expert in the hypothetical. (R. 388-390).

The issue thus presented is whether the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 1:08CV182-MP/AK**

D.    **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The
Commissioner's decision must be affirmed if it is supported by substantial evidence and
the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422
(11th Cir. 1997).  Findings of fact by the Commissioner which are supported by
substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397,
1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion."
Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It
is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703
F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the
evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86
F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence
supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624
(11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to
the Commissioner's findings, where there is substantially supportive evidence of the
Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d
227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the
Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v.
Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's
failure to apply correct legal standards or to provide the reviewing court with an

**No. 1:08CV182-MP/AK**

adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that Plaintiff is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairment?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.    Does the individual have any impairments which prevent past relevant work?

5.    Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him

**No. 1:08CV182-MP/AK**

from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

## E.    SUMMARY OF PLAINTIFF'S RELEVANT MEDICAL HISTORY

Plaintiff has seen multiple treating sources related to his bipolar disorder and anxiety symptoms.  He complained of anxiety in April 1999 when seeking treatment from the Dixie County Department of Health and in subsequent visits to the county, Plaintiff continued to present with anxiety, panic attacks, and pain.  (R. 141).  Between February 2004 and January 2005, Plaintiff sought treatment from Dr. Jesse A. Lipnick for pain in his left chest, shoulder, arm, neck, and face as well as chronic anxiety, depression, and anxiety for which medications were prescribed.  (R. 152-179). Apparently, Plaintiff was discharged from Dr. Lipnick's care for violating his practice's narcotics agreement.  (See R. 212).

On March 3, 2005, Dr. Bernard B. Bulcourf saw Plaintiff to evaluate Plaintiff's bipolar disorder symptoms and anger.  (R. 211).  Dr. Bulcourf observed that Plaintiff

**No. 1:08CV182-MP/AK**

exhibited normal attention, concentration, communication and interaction, reasoning, and social judgment. (R. 211-212). Plaintiff's affect was restrictive but "generally appropriate to the content of the conversation." (R. 212). Dr. Bulcourf's clinical impression was bipolar disorder, most recent episode depressed; pain disorder; suspected alcohol, opioid, and anxiolytic abuse; and poor social skills. (R. 213). Dr. Bulcourf's prognosis was that Plaintiff would be able to be gainfully employed as long as he had continual access to proper healthcare. (R. 213). Later in 2005, Plaintiff was admitted for detox treatment for pain medication withdrawal symptoms. (R. 218-231).

In a medical verification form completed January 11, 2006, Dr. A.M. Ramadan opined that Plaintiff's anxiety, depression, and shoulder pain still allowed Plaintiff to work with small groups of people and repetitively lift no more than 10 pounds. (R. 250). Moreover, Dr. Ramadan stated that Plaintiff was able to participate in activities for up to 11-20 hours. In addition, a mental residual functional capacity assessment completed by Dr. Angeles Alvarez-Mullin on February 16, 2006 provides that Plaintiff needed additional assistance with goal setting and psychological problems yet was able to work in situations with limited interaction with others. (R. 253). Dr. Alvarez-Mullin also completed a psychiatric review technique form in which she noted that Plaintiff suffered from bipolar disorder and antisocial personality traits but did not have any thought disorder or psychosis. (R. 267). Plaintiff's memory, concentration, and ability to follow directions were all normal. (R. 267).

**No. 1:08CV182-MP/AK**

Between December 2006 and March 2008, Plaintiff was treated for his anxiety and depression at Meridian Behavioral Healthcare. He presented with increased panic attacks and mood swings as well as difficulty sleeping. The diagnoses were bipolar disorder with psychotic symptoms, post-traumatic stress disorder (PTSD), and antisocial personality disorder. (R. 325-343). In August 2007, Plaintiff presented to the emergency room with symptoms of psychosis and was discharged with a diagnosis of resolved delirium, pneumonia, isolation from friends, and a GAF of 50-60. (R. 346-348). In the discharge summary, Dr. Louis W. Solomon observed that Plaintiff's mother reported that she locks up Plaintiff's pain and anxiety medication because she's afraid he abuses them. (R. 237-348).

## F.   SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff was 44 years old at the time of the hearing and had a 10th grade education. (R. 367). He had previously worked as a busboy and in retail sales positions and also did some part-time work during 2005, assisting his wife with detailing cars. (R. 370-373). He cannot lift much weight and is unable to walk or sit for long periods of time. He suffers from nervousness and fear when he's around people and also has panic attacks and severe mood swings that interfere with his ability to be near or communicate with people. (R. 374-375). He takes care of his seven-year-old daughter, watches TV most of the day and does not go out to restaurants, movies, or church because of his social anxiety. (R. 384-385). He also takes care of his dog. (R. 346).

**No. 1:08CV182-MP/AK**

The hypothetical posed to the vocational expert was light exertional work with some limitations.  The initial hypothetical included:  no ability to climb ladders, ropes or scaffolds; ability to climb ramps and stairs frequently; ability to balance, stoop and kneel frequently; ability to occasionally crouch or crawl; occasional ability to reach and handle items with his left arm; must avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, and dust; ability to only understand, remember and carry out simple instructions and perform simple, routine tasks.  (R. 388).  The expert testified that this hypothetical precluded Plaintiff's past relevant work as a busboy or in general merchandise sales.  However, there were other jobs in the national economy that Plaintiff could perform at the light and sedentary levels.  (R. 389-390).  The ALJ then added that the Plaintiff should not do any repetitive work and can only have occasional interaction with others.  (R. 390).  With these additional limitations, the vocation expert testified that this would reduce the number of suitable jobs to just one type of job: surveillance system monitor.  (R. 390).

**G.    DISCUSSION**

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy.  20 C.F.R. § 404.1520(a)(4).  The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert.  Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).

**No. 1:08CV182-MP/AK**

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her. <u>Phillips</u>, 357 F.3d at 1240. In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical that includes all of Claimant's impairments. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985).

Because the ALJ found that the Plaintiff's mental limitations still permitted him to perform simple routine tasks and occasionally interact with others, these are the only mental limitations the ALJ was required to pose to the expert. Therefore, the ALJ's hypothetical properly included all of the Plaintiff's mental limitations, including his affective disorder which makes him unable to frequently interact with others but still permits him to occasionally interact with others.

Accordingly, the ALJ properly applied the vocational expert's testimony to find that there are jobs existing in the national economy that Plaintiff is able to perform. Therefore, Plaintiff is not disabled.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this   ___***19th***___ day of January, 2010.

*s/ A. KORNBLUM*_____
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**No. 1:08CV182-MP/AK**

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:08CV182-MP/AK**